UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NBK INNOVATION XIII, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SUAVEI, INC., et al.,<br><br>Defendants. | Case No. 23-mc-80054-HSG<br><br>**ORDER DENYING MOTIONS FOR RECONSIDERATION, MOTIONS TO QUASH, AND MOTIONS FOR RECUSAL**<br><br>Re: Dkt. Nos. 67, 70, 71, 81, 84, 92, 98, 118, 119 |

In March 2023 Plaintiffs[1] registered a default judgment in this district from the District of Nevada against Defendants Suavei, Inc. and Afonso Infante. *See* Dkt. No. 1. Plaintiffs filed applications for writs of execution, which were issued by the Clerk's Office. Dkt. Nos. 9–12, 14–17. Plaintiffs then filed subpoenas for records from several banks. *See* Dkt. Nos. 19–23. Pro se Defendant Infante then filed a motion to quash the writs of execution and subpoenas. *See* Dkt. No. 22. The Court denied the motion to quash. Dkt. No. 66. Since then, Mr. Infante has filed serial motions to reconsider this order and halt Plaintiffs' collection efforts. The Court finds these matters appropriate for disposition without oral argument and the matters are deemed submitted. *See* Civil L.R. 7-1(b). As before, the Court finds that Mr. Infante has presented no legal basis to quash the writs of execution or subpoenas and **DENIES** his motions to the extent they seek to do so. *See* Dkt. Nos. 67, 71, 81, 84, 92, 98. The Court **TERMINATES AS MOOT** Mr. Infante's motion to stay. Dkt. No. 70. The Court further **DENIES** Mr. Infante's serial motions seeking the Court's recusal in this case. Dkt. Nos. 118, 119.

---

[1] Plaintiffs include NBK Innovation XIII, LLC, Dojo Ventures Fund II, LLC, SU Fund I, A Series of Incisive Ventures LP, Antonio Salerno, Susan Leiby, Alessco, Inc. Defined Benefit Plan, Robert Hess, MJ Jamiolkowski FLP.

## I. BACKGROUND

The parties are familiar with the background of this case, and the Court summarizes it here only as relevant to the discussion below. In August 2022 Plaintiffs filed a securities action in the District of Nevada against Defendants Suavei, Inc., Alonso Infante, and Allison Wong. *See NBK Innovation XIII, LLC et al v. Suavei, Inc. et al.*, Case No. 22-cv-01415-JAD-BNW (D. Nev. Aug. 30, 2022), Dkt. No. 1 ("Nevada Action"). Plaintiffs are a collection of individuals and entities that invested in Defendant Suavei, an internet security company. *Id.* at ¶¶ 1–2, 35–36. Plaintiffs alleged that Defendants had engaged in securities fraud, including by failing to disclose the company's financial condition and Mr. Infante's prior misuse of Suavei funds for his personal use. *See id.* at ¶¶ 9, 27–28.

After multiple unsuccessful attempts to serve Mr. Infante in the Nevada Action, Plaintiffs filed a motion to serve him by email under Federal Rule of Civil Procedure 4(f)(3) at afonso.infante@pm.me and afonso.infante@pobox.com. *See id.*, Dkt. No. 16. In response to one of Plaintiffs' emails, Mr. Infante actually replied: he referenced another federal lawsuit in California pending against him, claimed that he had given up his U.S. citizenship and permanently moved to Brazil since the last time they had spoken, but did not provide his updated mailing address. *See id.* at 7, 10; *see also id.*, Dkt. No. 16-10 at ¶ 7 & Ex. A. The court granted the motion for service by email. *See id.*, Dkt. No. 25. Plaintiffs served Mr. Infante via email, and eventually sought entry of default and default judgment. *See id.*, Dkt. Nos. 27–28, 31–33, 35–36. On March 15, 2023, the court entered default judgment against Mr. Infante in the amount of $1,173,500, plus pre- and post-judgment interest. *See id.*, Dkt. No. 39.

Plaintiffs registered the judgment against Mr. Infante in this district on March 17, 2023. Dkt. No. 4; *see also* 28 U.S.C. § 1963 ("A judgment in an action for the recovery of money or property entered in any . . . district court . . . may be registered by filing a certified copy of the judgment in any other district . . . when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown."). Plaintiffs then filed applications for writs of execution, which listed an address for Mr. Infante in Lafayette, California, and an email address used for service in the Nevada Action

2

(afonso.infante@pobox.com).  *See* Dkt. Nos. 5, 7, 9–10, 14–15.  The Clerk's Office issued the writs.  *See* Dkt. Nos. 6, 8, 11–12, 16–17.  Plaintiffs then filed subpoenas for records from several banks.  *See* Dkt. Nos. 19–21, 23.

On October 2, 2023, Mr. Infante filed a motion to quash the writs of execution and subpoenas.  Dkt. No. 22.  Mr. Infante's filing included a Costa Rican address and a different email address, waveforce443@protonmail.com.  In the motion to quash, he suggested that he had been unaware of the Nevada Action as well as this case.  *See* Dkt. No. 22 at 4–6, 13–14.  He further asserted that at least one of the email addresses used in the Nevada Action actually "belongs to a Brazilian national named Afonso Benedito Infante, who has never resided in the USA."  *Id.* at 5.  Mr. Infante claimed that he was only alerted to the cases because one of the banks had contacted him as an owner of the account number in one of the subpoenas.  *Id.* at 5–6.  The motion to quash raised several arguments, including procedural concerns about the service of process in the Nevada Action and the filings in this case, as well as challenges to this Court's jurisdiction and the scope of the subpoenas.  *See id.*  Mr. Infante requested to attend the hearing on the motion to quash via Zoom, indicating among other reasons, that he had "recently relocated to Argentina on December 1, 2023."  Dkt. Nos. 39–40.  Mr. Infante listed a new, Argentinian address on these subsequent filings, as well as a phone number that he indicated was for "voicemail only."  *Id.*  Ultimately, the Court determined that the motion to quash was appropriate for disposition without oral argument and did not hold a hearing.  *See* Dkt. No. 66 at 1.  Having reviewed the parties' materials in detail, the Court denied Mr. Infante's motion to quash on April 24, 2024.  *See id.*

Since then, Mr. Infante has filed several motions challenging the Court's orders, Plaintiffs' collection efforts, and the Court's own impartiality.  In a subsequent motion to quash, for example, Mr. Infante raised assertions of judicial bias against the undersigned and Magistrate Judge Donna Ryu.  *See* Dkt. No. 67 at 13–16.  Among his several objections, Mr. Infante pointed out that the Court held a case management conference in February 2024 that he did not know about and was unable to attend.  *See id.* at 15–16; *see also* Dkt. No. 57 (minute order).  This Court and Judge Ryu construed Mr. Infante's arguments as motions to disqualify, and referred the matters to other district judges.  *See* Dkt. No. 74; Dkt. No. 83.  Judge Vince Chhabria summarily denied the

3

request to disqualify this Court as frivolous.  Dkt. No. 80.  Judge Beth Labson Freeman similarly denied the request to disqualify Judge Ryu, noting that "[a]t bottom, Defendant is simply contesting an adverse ruling against him."  *See* Dkt. No. 85 at 3.

The following motions remain pending:

- Motion to Quash Order for Appearance and Examination of a Representative of Charles Schwab & Co., Inc. and for Dismissal of Case with Prejudice (Dkt. No. 67);
- Motion for Stay of Subpoena (Dkt. No. 70);
- Motion for Reconsideration of Order Denying Infante's Motion to Quash (Dkt. No. 71);
- Motion for Release of Garnishment at Charles Schwab & Co., Inc. Due to Writ of Execution (Dkt. No. 81);
- Administrative Motion (Civil Local Rule 7-11) for Granting Motion for Reconsideration of Order Denying Infante's Motion to Quash (Dkt. No. 84);
- "Renotice" Motion to Quash Writs of Execution, Subpoenas, and for Dismissal with Prejudice, Request for Reconsideration, and Request for Disciplinary Action (Dkt. No. 92);
- Motion to Quash Plaintiffs' Application and order for Appearance and Examination of Palo Alto Networks, Inc. (Dkt. No. 98);
- Motion for Protective Order (Dkt. No. 102);
- Motion for Sanctions  (Dkt. No. 103);
- Motion for Leave to File Motion for Recusal (Dkt. No. 118); and
- Motion for Recusal (Dkt. No. 119).

The pending motions have been taken under submission without a hearing.  The Court further notes that some of Mr. Infante's motions, including the Motion for Protective Order, Dkt. No. 102, and Motion for Sanctions, Dkt. No. 103, have been referred to Judge Ryu and may be resolved in due course following this order.

In the midst of these filings, and almost two years after the default judgment was filed

4

1  against him, Mr. Infante filed a motion to dismiss and a motion for sanctions in the Nevada Action
2  on February 27, 2025. *See Nevada Action*, Dkt. Nos. 62, 63. As here, Mr. Infante urges that—
3  despite the Nevada court's order granting service by email—Mr. Infante was somehow improperly
4  served. *See* Dkt. No. 62 at 5–7. He requests, among other things, that the Nevada court vacate the
5  default judgment. *See id.* at 11. These motions still remain pending in the Nevada Action, and as
6  of the date of this order the default judgment remains in effect.

## II.   DISCUSSION

Mr. Infante is a judgment debtor who owes Plaintiffs over $1 million. He has filed multiple motions and raised several arguments with this Court as to why Plaintiffs' collection efforts nonetheless have been improper. The Court does not find any of his arguments persuasive. To the contrary, the Court has serious concerns that Mr. Infante is engaged in a long campaign of gamesmanship to evade Plaintiffs' collection efforts. Mr. Infante's arguments across his motions overlap considerably.

### A.   Service

As an initial matter, Mr. Infante repeatedly argues that he has not been properly served in this case, and that the only way to serve him with any filings is through the mechanisms provided by the Hague Convention.[2] *See, e.g.*, Dkt. No. 67 at 6–7; Dkt. No. 81 at 2–3, 9–12; Dkt. No. 90 at 2; Dkt. No. 92 at 2; Dkt. No. 98 at 4. Specifically, Mr. Infante appears to argue that every document in this case must be served through the designated central authority in Argentina, the Ministry of Foreign Affairs, International Trade and Worship. *Id.* Mr. Infante has offered no authority that supports this sweeping proposition.

This is a post-judgment collection action. The underlying case was filed—and judgment was entered—in the District of Nevada. The court in the Nevada Action granted Plaintiffs' request to serve Mr. Infante by email, and Plaintiffs did so. Despite Mr. Infante's suggestion

---

[2] *See* Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638. For ease of reference, the Court refers throughout this order to this multilateral treaty as the "Hague Convention" or "Convention."

5

otherwise, he was thus properly served in the Nevada Action.³  Plaintiffs later registered the judgment against Mr. Infante in this district under 28 U.S.C. § 1963 to enable them to enforce the judgment against Mr. Infante's assets in this district.  Section 1963, however, does not require that debtors receive notice when a judgment is registered in another district.  *See* § 2787 Registration of Judgments, 11 Fed. Prac. & Proc. Civ. § 2787 (3d ed.) ("No notice [of the registration under § 1963] need be given to the judgment debtor.").  Registration is "essentially an administrative task," and only occurs "*after* full due process has been provided during the original adjudication on the merits that determined the parties' substantive rights and obligations." *See Fid. Nat'l Fin., Inc. v. Friedman*, 935 F.3d 696, 700–02 (9th Cir. 2019) (emphasis in original).  This is consistent with the statute's purpose, which "aims to spare creditors and debtors the additional cost and harassment of further litigation which would otherwise be required by way of an action on the judgment in a district court other than that where the judgment was originally obtained." *Id.* (quotation omitted).  In short, the registration of the judgment in this district did not initiate a new action such that service of process was required under the Hague Convention.  *Cf. Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988) ("Service of process [under the Hague Convention] refers to a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action.").

---

³ To the extent Mr. Infante suggests that the email addresses used in the Nevada Action did not belong to him, this is belied by the record.  *See* Dkt. No. 67 at 18 ("Mr. Infante has not acknowledged using this email . . . ."); Dkt. No. 49 at ¶ 3 ("The email addresses cited by the plaintiffs have never been mine.").  As noted above, Mr. Infante actually responded to at least one of Plaintiffs' emails.  In November 2022, several months after the Nevada Action was filed, Ron Collett, a member of Plaintiff NBK Innovation and the company's Class Manager for the investment in Suavei, Inc., emailed Mr. Infante about a conversation to settle "the legal matters at hand."  *See* Nevada Action, Dkt. No. 16-10 at ¶¶ 1–3. 6–7.  On November 16, Mr. Infante responded to the email from afonso.infante@pm.me.  *See id.*, Dkt. No. 16-10 at ¶ 7, & Ex. A.  Mr. Infante referenced another federal lawsuit in California against him, *Jade Lin, Minh Hong et al. v. Suavei, Inc., Afonso Infante Allison Wong, et al.*, Case No. 3:20-cv-00862-L-AHG (S.D. Cal.), stating that he "went through with the plan we discussed early this year and that seems to have worked."  *Id.*  Mr. Infante also claimed that he moved from the Philippines to Brazil permanently, and had given up his U.S. citizenship since the last time they had spoken.  *See id.*  Mr. Infante clearly received the email at this email address, but failed to respond after Mr. Collett followed up and attached the court documents for the Nevada Action.  There is simply no support for Mr. Infante's suggestion that the email address belonged to some other "Afonso Infante."  Dkt. No. 22 at 5; Dkt. No. 67 at 18.  The Court finds Mr. Infante's disavowal of these email records flatly unbelievable, and it undermines the credibility of all his filings in this case.

1  As for service of the third-party discovery, Federal Rule of Civil Procedure 69(a)(2) allows a judgment creditor to "obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2). As the Supreme Court has noted, "[t]he rules governing discovery in postjudgment execution proceedings are quite permissive." *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 138 (2014).

Again, Mr. Infante has not provided any authority that supports his contention that he must be served with such third-party discovery through the designated central authority in Argentina. *See, e.g.*, Dkt. No. 67 at 2–3, 6–7; Dkt. No. 81 at 2–3, 9–12; Dkt. No. 92 at 2; *see also* Dkt. No. 29 at 2; Dkt. No. 33 at 8–9. The few cases that he cites are simply inapposite. None of them involve post-judgment collection actions or discovery under Rule 69(a)(2).[4] Plaintiff repeatedly cites *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, although he offers little discussion of the case. *See, e.g.*, Dkt. No. 81 at 10. In any event, the Supreme Court in *Schlunk* explained that "compliance with the Convention is mandatory in all cases *to which it applies*," but the case specifically involved service of a complaint. *See Schlunk*, 486 U.S. at 705 (emphasis added); *see also id.* at 699–706 (discussing negotiation history regarding the Convention's application to "service of process"); *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004) ("The Hague Convention, ratified by the United States in 1965, regularized and liberalized *service of process* in international civil suits.") (emphasis added). The Supreme Court has not addressed any broader applications of the Hague Convention. *Cf. Water Splash, Inc. v. Menon*, 581 U.S. 271, 278, & n.2 (2017) (suggesting that scope of the Hague Convention is limited to service of process); *accord In re Kirwan Offs. S.a.R.L.*, 792 F. App'x 99, 102 (2d Cir. 2019). Requiring service under the Hague Convention of every document filed in this case, as Mr. Infante urges, would also undermine the

---

[4] Mr. Infante references "*Mobilisa, Inc. v. Doe*," Dkt. No. 67 at 4, but offers no citation for this case. Mr. Infante suggests that this case "emphasizes the need for notice to affected parties when seeking discovery from third parties . . . ." *Id.* The only case under this name that the Court could identify was a state court case, *Mobilisa, Inc. v. Doe*, 217 Ariz. 103, 106–12 (Ariz. Ct. App. 2007). The case discusses the standard to apply when identifying an anonymous email user. As such, it is not relevant to the question at hand. But in any event, all the court determined was that the requesting party make "reasonable efforts to inform the anonymous party of the pending discovery request." *Id.* at 110–11.

7

treaty's explicit purpose "to simplify, standardize, and generally improve the process of serving documents abroad." *See Water Splash*, 581 U.S. at 273. Mr. Infante would wield the Hague Convention here as a sword to slow or altogether prevent Plaintiffs' post-judgment collection efforts.

The Court further notes that Article 1 of the Hague Convention explicitly states that it "shall not apply where the address of the person to be served with the document is not known." Art. 1, Hague Convention, T.I.A.S. No. 6638. Although Mr. Infante has listed an Argentinian address on his filings, mail sent by the Court to this address has been repeatedly returned as undeliverable. *See, e.g.*, Dkt. Nos. 58, 82. Plaintiffs have also had similar problems, noting that the provided address in Salta Province, Argentina, appears incomplete. *See* Dkt. No. 50. Even now, therefore, it is not clear that Mr. Infante's actual address is known.

Plaintiffs go further and suggest that Mr. Infante may actually reside in California. *See, e.g.*, Dkt. No. 114. Plaintiffs point out that in February 2025, an employment case was filed in Contra Costa Superior Court against Palo Alto Networks, Inc. and several of its senior managers. *See* Dkt. No. 114-1, Ex. A. The case was filed by "Afonso Infante," who alleges he is "a resident of the State of California" and was employed by Palo Alto Networks from November 2022 to October 2024. *See id.* at 2. The complaint alleges that the plaintiff was hired as "a Senior Technical Marketing Engineer" for the company, and lists a P.O. Box in Orinda, California, for this plaintiff. *Id.* at 2–3. Mr. Infante in this case claims that this is a different "Afonso Infante," unrelated to him. *See* Dkt. Nos. 116, 117. This is completely implausible. In prior filings in this case, Mr. Infante acknowledged that he participated in an online conference for Palo Alto Networks in April 2023. *See* Dkt. No. 95; Dkt. No. 106 at 3; *see also* Dkt. No. 93-1 at ¶ 7; Dkt. No. 93-2, Ex. 1. The materials for the conference listed Mr. Infante as "a Senior Technical Marketing Engineer." *See* Dkt. No. 93-2, Ex. 1. In response to this exhibit, Mr. Infante stated that the document "fails to establish that I, or any of the conference speakers, were physically present in Northern California" because the conference was online and "[v]irtual participation in a conference does not confer jurisdiction in any particular location . . . ." Dkt. No. 95 at 3. Notably, Mr. Infante did not argue that this was a different person entirely. Now, however, Mr. Infante

8

would have the Court believe that Palo Alto Networks employed someone named "Afonso Infante" as a Senior Technical Marketing Engineer, while at the same time, engaging a *different* Afonso Infante, also a Senior Technical Marketing Engineer, to speak at one of its events. The charade here is plain, and Mr. Infante may have perjured himself in multiple court filings. But even setting that aside, he has not established that he lives abroad or that his foreign address is known such that the Hague Convention could come into play at all.

Mr. Infante also suggests that the Federal Rule of Civil Procedure 45 somehow mandates personal service under these circumstances. *See* Dkt. No. 67 at 3; Dkt. No. 81 at 13–14. Under Rule 45(a)(4), if a subpoena commands the production of documents or tangible things "*before trial*, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." Fed. R. Civ. P. 45(a)(4) (emphasis added). Thus by its terms, the Rule only applies to subpoenas issued before trial. And the vast majority of courts to address this issue have concluded that Rule 45's notice requirements do not apply to post-judgment subpoenas. *Accord Consumer Fin. Prot. Bureau v. Integrity Advance, LLC*, No. 21-MC-206-DDC-TJJ, 2022 WL 2791173, at *6 (D. Kan. July 15, 2022); *PNC Equip. Fin., LLC v. Mariani*, No. CV 19-76 (MAS), 2021 WL 4078864, at *2 (D.N.J. Sept. 8, 2021) (same); *Tire Stickers, LLC v. Scuderia Automobili*, No. 6:19-MC-2-ORL-41LRH, 2020 WL 13597421, at *4 (M.D. Fla. Sept. 18, 2020) (same); *Signature Fin., LLC v. McClung*, No. 2:19-MC-00018, 2019 WL 2130157, at *2 (W.D. Ark. May 15, 2019) (same). *But see Cessna Fin. Corp. v. Al Ghaith Holding Co. PJSC*, No. 15CV9857PGGKNF, 2021 WL 949714, at *6 (S.D.N.Y. Mar. 12, 2021). As one court explained when considering the policy implications undergirding state and federal laws, "[t]ipping off a judgment debtor that discovery of its assets is imminent may give it an opportunity to move or conceal those assets." *See Stati v. Republic of Kazakhstan*, No. 19 MISC. 382 (PAE), 2024 WL 3442663, at *7 (S.D.N.Y. July 17, 2024), *appeal withdrawn*, No. 24-2198, 2025 WL 513037 (2d Cir. Jan. 27, 2025) (rejecting argument that notice is required for post-judgment discovery subpoenas under New York law or Federal Rules of Civil Procedure).

Mr. Infante next suggests that his due process rights have been violated due to the allegedly improper service. *See, e.g.*, Dkt. No. 67 at 3–5, 11–13; Dkt. No. 92 at 2. As Mr.

Infante's own case explains, the Due Process Clause requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Despite Mr. Infante's suggestion otherwise, he has received notice of, and had ample opportunity to review and respond to, the materials in this case. He has had actual notice of the litigation since at least October 2, 2023, when he filed the first motion to quash. Dkt. No. 22. In this motion, Mr. Infante included an email address, waveforce443@protonmail.com, and in addition to attempting to mail Mr. Infante documents at the various physical addresses he has provided over time, Plaintiffs have emailed documents to Mr. Infante using the above email address. *See, e.g.*, Dkt. Nos. 109-3, 108-3, 101-2, 96-2, 89-3, 87-1, 75-2, 62-2, 56-1, 54-2, 53-1, 50-1, 28-5, 27, 25. Mr. Infante has communicated with Plaintiffs' counsel using this email address. *See* Dkt. No. 29, Ex. A. Plaintiffs also attempted to provide notice to Mr. Infante using other email addresses, approved by the court in the Nevada Action and to which Mr. Infante had previously responded. *See, e.g.*, Dkt. Nos. 7, 10, 14, 64; *see also* Nevada Action, Dkt. No. 16-10 at ¶ 7, & Ex. A. As detailed in the Nevada Action, Plaintiffs previously attempted to locate and serve Mr. Infante through various means, even hiring a private investigator. *See* Dkt. No. 24 at 2–3, 6–7; Dkt. No. 24-1, Ex. B. They were ultimately unsuccessful in locating him. *Id.* Mr. Infante has declined to provide any other means of providing him notice outside the Hague Convention.

In the early stages of this case, and in the midst of the briefing on the first motion to quash, Magistrate Judge Lisa J. Cisneros stated that Mr. Infante had been "manually filing documents in this matter," and noted that it was "unclear whether he personally delivered them to the Clerk of the Court for filing or whether he has mailed these documents in for processing and filing by the Clerk."[5] Dkt. No. 37 at 1–2. Judge Cisneros ordered Mr. Infante to register as an ECF user or file a declaration under penalty of perjury explaining the barriers preventing him from doing so. *See id.* at 2. In response, Mr. Infante stated that he "do[es] not have a personal Internet connection due

---

[5] This case was initially assigned to Judge Cisneros. *See* Dkt. No. 2. The case was reassigned in January 2024, after the parties did not consent to the jurisdiction of a United States Magistrate Judge. *See* Dkt. Nos. 51, 52.

10

to the remote nature of [his] new residence in Argentina," and he cited the "prohibitive costs of obtaining Satellite Internet connection . . . ." *See* Dkt. No. 43 at 1.  He further asserted that "[u]tilizing a public Internet connection present[ed] significant logistical and financial difficulties" given "[t]he considerable distance to the nearest access point, couple[d] with the high costs involved . . . ." *Id.* at 2.  Mr. Infante further declared that he "expressly withhold[s] [his] consent to receive service of court orders or any other service via email." *Id.*  He urged that all documents in this case have to be served on him through the mechanisms provided for by the Hague Convention.  *Id.* at 2–3.

As already discussed, the Hague Convention does not appear to apply here at all.  And despite the purported logistical difficulty in keeping apprised of this case and filing documents, Mr. Infante has filed over thirty separate documents.  *See* Dkt. Nos. 22, 29, 30, 31, 34, 35, 36, 39, 43, 48, 49, 67, 69, 70, 71, 77, 78, 81, 84, 88, 90, 92, 95, 98, 99, 102, 103, 104, 105, 106, 110, 111, 113, 116, 118, 119.  Mr. Infante has responded quickly to every filing on the docket, often within days.  For example, Mr. Infante drafted, signed, and manually filed a second motion to quash just one day after the Court denied his first motion.[6]  *Compare* Dkt. No. 66 (order filed April 24, 2024), *with* Dkt. No. 67 (motion to quashed filed April 25, 2024).  Similarly, Judge Ryu granted Plaintiffs' application for an Order for Appearance and Examination of a designated representative of Palo Alto Networks, Inc. on January 10, 2025.  *See* Dkt. No. 97.  That same day, Mr. Infante drafted, signed, and manually filed a motion to quash the application.  Dkt. No. 98.  In short, the docket makes clear that Plaintiffs have taken reasonable steps to ensure that Mr. Infante has been apprised of this case and provided an opportunity to be heard.  Given that Mr. Infante has known of this case for over a year and a half, and has filed multiple motions and other ancillary documents in that time, the Court is unpersuaded by his claim that he has not received constitutionally adequate process.

Plainly, Mr. Infante wishes to avail himself of this Court's procedures and resources only when he views it as advantageous to himself to do so.  He corresponds with Plaintiffs via email,

---

[6] For clarity, the Court notes that none of Mr. Infante's filings were mailed from Argentina.  Each has been manually filed, in person at the Clerk's Office by either Mr. Infante or a representative.

11

1  requests that the Court set Zoom hearings, and manages to file documents by submitting them to
2  the Clerk's Office in person (whether on his own or through a representative).  Yet he asserts that
3  he cannot become an e-filer and cannot receive service of any documents by email because
4  "[u]tilizing a public Internet connection presents significant logistical and financial difficulties."
5  *See* Dkt. No. 43 at 2.  This is simply not credible, and it seems apparent that Mr. Infante believes
6  he can obstruct Plaintiffs' legitimate collection efforts by making it difficult to serve and provide
7  him copies of court documents.  This stops now.  In the absence of a usable, physical address, the
8  Court finds that continued notice and service through Mr. Infante's email address,
9  waveforce443@protonmail.com, is reasonably calculated to provide him with actual notice, and is
10 appropriate and sufficient under the circumstances.  *Accord Steve McCurry Studios, LLC v.*
11 *Web2Web Mktg., Inc.*, No. C 13-80246 WHA, 2014 WL 1877547, at *2–3 (N.D. Cal. May 9,
12 2014) (permitting service by email for all future documents) (collecting cases).  Mr. Infante listed
13 this address on his filings in this case and at times has used this address to correspond with
14 Plaintiffs' counsel about this case.  *See, e.g.*, Dkt. No. 29, Ex. A.  Moving forward, all filings in
15 this case may be served by email to Mr. Infante at waveforce443@protonmail.com.
16       To the extent Mr. Infante has an alternative email address that he would prefer the Court
17 and the parties to use moving forward, he may file a written request on the docket.  The Court
18 cautions Mr. Infante, however, that this is not an invitation to continue challenging service by
19 email.  The Court has heard and rejected Mr. Infante's arguments on this issue.  Mr. Infante also
20 remains free to register as an ECF user.

21       **B.**    **Motions for Reconsideration and Additional Motions to Quash**
22       Mr. Infante suggests that the Court must reconsider its order denying his first motion to
23 quash because it failed to consider his arguments.  *See, e.g.*, Dkt. No. 71 at 2; *see also* Dkt. No. 84;
24 Dkt. No. 92 at 2–3.  Not so.  The Court carefully considered all of Mr. Infante's arguments and
25 filings, including Dkt. Nos. 29 and 33, and simply disagreed with them.  Mr. Infante is not entitled
26 to file serial motions until he gets the answer he wants.  Again, the Court has considered all Mr.
27 Infante's arguments and does not find them persuasive.  Still, Mr. Infante continues raising the
28 same arguments in subsequent filings.  Below is a non-exhaustive list.

1    Mr. Infante suggests that because of the alleged service problems with subpoenas that were
2 issued, Plaintiffs have improperly "uncovered information" about Mr. Infante's financial accounts
3 that they have used in subsequent subpoenas. *See, e.g.*, Dkt. No. 67 at 7–9; Dkt. No. 92 at 6.  He
4 calls such information "fruit of the poisonous tree," and claims that Plaintiffs should not be able to
5 rely on it in any way and the subpoenas should all be quashed.  *Id.*  This doctrine does not apply to
6 the circumstances here.  And as already explained above, Plaintiffs endeavored to provide Mr.
7 Infante with notice by emailing him using email addresses he had previously used and responded
8 to in the past.

9    Mr. Infante again urges that the Court lacks personal jurisdiction over him because he is
10 not a California resident.  *See, e.g.*, Dkt. No. 67 at 9–11; Dkt. No. 92 at 5–6.  Mr. Infante
11 misunderstands the nature of these proceedings.  The Court need not have personal jurisdiction
12 over a debtor when a judgment is registered under § 1963.  *See Friedman*, 935 F.3d at 699–700.
13 The Ninth Circuit has explained that neither § 1963 nor the Due Process Clause "require that a
14 court have personal jurisdiction over a judgment debtor in order to register an existing judgment."
15 *Id.*  "[O]nce a federal court of competent jurisdiction has determined the parties' substantive rights
16 and entered a judgment following a proceeding that accords with due process, that federal
17 judgment should be enforceable in any other federal district by way of the federal judgment
18 registration statute."  *Id.* at 702.  And as the Court previously explained, *quasi in rem* jurisdiction
19 permits the enforcement of a judgment in a forum where the defendant maintains assets.  *See* Dkt.
20 No. 66 at 1–2.  Mr. Infante's emphatic but unsupported assertions that he has no assets here are
21 neither persuasive nor determinative.

22    Mr. Infante also argues that the scope of the subpoenas and other discovery requests are
23 improper.  *See* Dkt. No. 67 at 11–13; Dkt. No. 92 at 5; Dkt. No. 95 at 4; Dkt. No. 98.  Again, the
24 Court disagrees.[7]  Should Mr. Infante seek to prevent disclosure of his financial information, he
25 may, as the Court has already advised him, meet and confer with Plaintiffs to determine whether
26 the parties can agree to a stipulated protective order.  *See* Dkt. No. 66 at 2.  But he may not

---

[7] To the extent Mr. Infante attempts to argue that he has no connection to Palo Alto Networks, Inc., *see* Dkt. No. 98, the Court has already discussed why this is not credible.

1  insulate himself from collections by claiming that his financial information is private.  Plaintiffs
2  are entitled to collect on their judgment without further obstruction or delay.

### C. Motion for Release of Garnishment

Mr. Infante filed a motion for release of garnishment at Charles Schwab & Co. Inc.  *See* Dkt. No. 81.  Plaintiffs and Charles Schwab both indicated that all restrictions on Mr. Infante's remaining accounts with the bank have been lifted, and the bank did not garnish any funds from these accounts.  *See* Dkt. Nos. 86, 87.  This motion appears, therefore, to be moot and the Court **DENIES** the motion on this basis.  To the extent Mr. Infante suggests that sanctions are somehow warranted, Dkt. No. 88, the Court disagrees.

### D. Requests for Recusal and Claims of Judicial Bias

Throughout Mr. Infante's filings, he has suggested that the case has been somehow tainted by judicial bias.  He repeatedly suggests that his inability to attend a case management conference in February 2024 somehow prejudiced him and constitutes judicial bias.  *See* Dkt. Nos. 92, 118, 119.  As reflected in the minutes from that conference, no substantive decisions were made.  *See* Dkt. No. 57.  The Court simply took the first motion to quash under submission without argument.  *Id.*  Moreover, Mr. Infante never asked to appear remotely when the case management conference was noticed, even though he was able to file documents approximately a month before and two months after the conference.  Dkt. Nos. 49, 55, 57, 67.  And his claims of judicial bias have already been found frivolous.  *See* Dkt. No. 67 at 15–16.  Mr. Infante's other arguments are equally frivolous.

Plaintiffs filed an ex parte motion to file a supplemental memorandum.  *See* Dkt. No. 114.  Although the Court denied the request, Mr. Infante appears to take issue with the manner in which it was denied.

- Mr. Infante suggests that the Court filed its order without an opportunity for him to be heard on the issue.  *See* Dkt. No. 118-1 at 2.  However, Mr. Infante filed, and the Court reviewed, his opposition brief.  Dkt. No. 116.
- In its order, the Court said it was improper for an unknown third party to

14

communicate with the Court about the pending motion on Mr. Infante's behalf. Dkt. No. 115. This was—and is—improper. Mr. Infante is representing himself in this action and any communications with the Court must be filed by him on the docket. To the extent Mr. Infante has retained counsel, he or she must file a notice of appearance on the docket.

- The Court also told both sides that further filings would not be accepted in this case while it considered the pending motions. Dkt. No. 115. Mr. Infante urges that this somehow "disproportionally affects [him] as a pro se litigant, while allowing Plaintiffs unrestricted access to the Court." *See* Dkt. No. 118-1 at 2. This is nonsensical. The Court's order was explicitly evenhanded, directing both parties to stop their serial filings while it considered the pending motions. *See* Dkt. No. 115.

Mr. Infante suggests that there is "[a]n overall appearance of bias" in this case. *See* Dkt. No. 119 at 2, 6. At bottom, Mr. Infante appears to seek the Court's recusal simply because it has disagreed with him. This is not a basis for recusal. The Court **DENIES** these motions.

### E.  Attorney Misconduct

Mr. Infante also repeatedly argues that Plaintiffs' counsel have acted improperly, sought to harass him, and somehow breached their duty of candor to the court. *See* Dkt. No. 92 at 3–3; Dkt. No. 98 at 5. Again, Mr. Infante appears to take issue with Plaintiffs zealous collection efforts. They have acted within their rights and Mr. Infante's disagreement with them is not a basis for sanctions and does constitute misconduct. The Court finds no support for his assertions of attorney misconduct and **DENIES** Mr. Infante's motions on this basis as well.

### III.  CONCLUSION

The Court **DENIES** Mr. Infante's motions. Dkt. Nos. 67, 71, 81, 84, 92, 98, 118, 119. The default judgment has not been set aside in the Nevada Action and remains enforceable. Mr. Infante's motion to stay the enforcement of the Charles Schwab subpoena until resolution of his motion for reconsideration is further **TERMINATED AS MOOT**. Dkt. No. 70. Judge Ryu will address the remaining motions still pending before her in due course and at the convenience of her

15

calendar.  *See* Dkt. Nos. 102, 103.  The Court expects the parties to cooperate fully with Judge Ryu and follow any procedures she puts in place to resolve any further collection efforts here and to move this matter to a prompt conclusion.  The Clerk is directed to serve this order—and all future court filings—on Mr. Infante via email at waveforce443@protonmail.com.  To streamline this process in future, the Clerk is further directed to add Mr. Infante's email address to ECF.

**IT IS SO ORDERED.**

Dated: 5/22/2025

HAYWOOD S. GILLIAM, JR.
United States District Judge

16